UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

Case No. 24-1424

---

BEIJING ABACE BIOLOGY CO., LTD.,

Plaintiff – Appellant,

CREATIVE DYNAMICS, INC.

Plaintiff,

v.

CHUNHONG ZHANG, MTOZ BIOLABS, INC.,

Defendants – Appellees,

ABC CORP. 1, d/b/a IgClue, d/b/a Ig-Clue; ABC CORPS. 2-10;
JOHN DOES 1-10,

Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

**BRIEF OF PLAINTIFF-APPELLANT,
BEIJING ABACE BIOLOGY CO., LTD**

---

Stephen T. Melnick, No. 1135908
smelnick@littler.com
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, Massachusetts  02110
Telephone:  617.378.6000

Willard C. Shih, No. 1212372
wshih@wilentz.com
WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Telephone:  732.855.6016

*Attorneys for Plaintiff-Appellant,
Beijing Abace Biology Co., LTD*

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Beijing Abace Biology Co., LTD by and through its attorneys, states it has no parent corporation and there are no publicly held corporations that own ten percent (10%) or more of its stock.

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

DISCLOSURE STATEMENT ...................................................................i

TABLE OF CONTENTS................................................................... ii

TABLE OF AUTHORITIES ..............................................................iv

I.    JURISDICTIONAL STATEMENT ...............................................1

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW.................1

III.    STATEMENT OF THE CASE .....................................................2

    A.    Factual Background................................................................2

        1.    Plaintiff Is a Leader In The Pharmaceutical And Life Science Research And Development Industries. .......................2

        2.    Plaintiff Hired Dr. Zhang And Required Her Not To Compete ...................................................................2

        3.    Dr. Zhang Co-Founds MtoZ to Compete.................................4

    B.    Relevant Procedural History and Rulings Presented for Review ........6

IV.    SUMMARY OF THE ARGUMENT .............................................7

V.    ARGUMENT...........................................................................8

    A.    Standard of Review ..............................................................8

    B.    Plaintiff Demonstrated that Dr. Zhang Competed In Violation of the Agreements. ................................................................8

    C.    Plaintiff Demonstrated that Dr. Zhang's Violation of the Agreements Is Actionable Under Chinese Law.................................10

        1.    The Court Should Continue to Apply Chinese Law to the Agreements. ...............................................................10

2.   The District Court Rejected Numerous Chinese Court Cases, From Lower Courts to Higher Courts, Finding Agreements Similar to Dr. Zhang's Enforceable. ...................12

3.   The District Court Erred When It Determined Chinese Law Permitted Dr. Zhang to Compete Because She Was Not Paid Post-Employment Compensation. ...........................16

4.   The District Court Erred When It Determined Dr. Zhang Does Not Qualify As A Senior Personnel Who Is Bound Not To Compete.......................................................19

VI.   CONCLUSION.............................................................20

RULE 32(G) CERTIFICATE OF COMPLIANCE................................21

CERTIFICATE OF SERVICE ............................................23

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)....................................................................................... 8

*Brandt v. Fitzpatrick,*
    957 F.3d 67 (1st Cir. 2020) ......................................................................... 8

*In re Newport Plaza Assocs., LP,*
    985 F.2d 640 (1st Cir. 1993)........................................................................ 10

*Pina v. Children's Place,*
    740 F.3d 785, 795 (1st Cir. 2014).............................................................. 8

*Shimizu Corp. v. Dow Roofing Sys., LLC,*
    U.S. Dist. LEXIS 139260 (D.Mass. Sept. 27, 2013) ......................................... 11

**Statutes**

28 U.S.C § 1291 ...........................................................................................................1

28 U.S.C § 1332 ...........................................................................................................1

**Other**

*Beijing Zhongke Dayang Tech. Dev. Co., Ltd. v. Chen and Others*
    (China) ................................................................................................. 18

*Ding Fan v. Shenzhen Speed Tech Co., Ltd.* (China) ......................................... 16

*Li Binghui v. Huizhou Qiangjun Construction Co., Ltd.* (China)......................... 17

*Li Meng and Beijing City Haidian District New Giant Training*
    *School,* Beijing City No. 1 Intermediate People's Court (China) .................... 18

*Yu Kai v. Juneng Industrial Co. Ltd.* (China) ....................................................... 15

*Zhang, Guoping v. Shanghai Dingtian Fashion Technology Co., Ltd.*
    (China) ................................................................................................. 17

Article 24 of the Chinese Labor Contract Law................................................. 13, 16

iv

Article 38 of The Minutes of the Symposium on Legal
     Implementation Issues in Labor Dispute Cases by the Beijing High
     People's Court and the Beijing Labor Dispute Arbitration
     Committee....................................................................................... 13, 15

Articles 510 and 511 of the Civil Code of the People's Republic of
     China ........................................................................................... 13

Article 36 of The Interpretation of the Supreme People's Court on
     Several Issues Concerning the Application of Law in Labor
     Dispute Cases (IV) ....................................................................... 14

**Rules**

Fed. R. Civ. P. 56(c)................................................................................. 8

# I.    JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter pursuant to 28 U.S.C § 1332 because the parties are entirely diverse, as Plaintiff Creative Dynamics, Inc. is a citizen of the State of New York, Plaintiff Beijing Abace Biology Co., Ltd. is a citizen of the country of China, and Defendants Chunhong Zhang and MtoZ Biolabs, Inc. are citizens of the State of Massachusetts; and because the amount in controversy exceeded $75,000, exclusive of interest and costs.

The District Court entered final judgment, disposing of all parties' claims, on April 30, 2024.  Abace filed its Notice of Appeal on April 26, 2024, with an Amended Notice of Appeal filed May 9, 2024.  This Court has jurisdiction pursuant to 28 U.S.C § 1291, as this is an appeal from a final decision of a District Court.

# II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err in granting Defendants' motion for summary judgment and dismissing Abace's claims?

2.    Did the District Court err is denying Abace's motion for summary judgment?

### III. STATEMENT OF THE CASE

**A.    Factual Background**

**1.    Plaintiff Is a Leader In The Pharmaceutical And Life Science Research And Development Industries.**

Plaintiff Beijing Abace Biology Co., LTD ("Abace" or "Plaintiff")[1] and its corporate affiliates offer international pharmaceutical and life science research and development worldwide, but primarily in the United States and the People's Republic of China. *See* JA 87, 104-06 and https://www.abace-biology.com/.

Plaintiff was founded in 2004 with the goal of using a novel outsourcing business model, integrating its expertise into accessible research resources in an international setting to co-develop new technologies and medicines with pharmaceutical and other similar companies. Plaintiff and its affiliates collaborate with over 6000 pharmaceutical and biotech companies and research laboratories worldwide. *Ibid*.

**2.    Plaintiff Hired Dr. Zhang And Required Her Not To Compete**

In 2014, Plaintiff hired Dr. Zhang and assigned her to its Creative Proteomics Department. JA117-18.   Both when she was hired and as she progressed with the company and received promotions, Plaintiff required Dr. Zhang to sign agreements which prevent her from engaging in competitive activities, among other terms. These

---

[1]  Creative Dynamics, Inc. was a plaintiff in the District Court, but is not party to this appeal.

agreements include a Confidentiality and Non-Competition Agreement, a Labor Contract, and a Cadres Agreement (collectively, the "Agreements"). JA47, 60, and 85. In response to a question concerning how many agreements she signed that restricted her right to compete, Dr. Zhang testified: "so how many, I don't know, but I did sign a non-compete." JA129.

The Agreements restricted Dr. Zhang's ability to compete while she was employed and thereafter. The Confidentiality and Non-Competition Agreement states, "Party B [Zhang] shall not, directly or indirectly, engage in or assist others to engage in the same or similar or competitive business as Party A [Abace] within [blank] months (up to the next day of the [blank] month after he leaves office)." JA52. It further states, "Party B [Dr. Zhang] shall not hold a post or hold a part-time job in an organization with similar business and competitive relationship with Party A [Abace] or accept the employment of an individual with similar business and competitive relationship with Party A [Abace] within [blank] months from the date of resignation (until the next day of the month after resignation)." *Ibid*.

The Labor Contract recites that Dr. Zhang agreed to enter into a confidentiality agreement and states that it "shall be implemented in compliance with (for details, please refer to the Confidentiality and Competition Prohibition Agreement)." JA66.

The Cadres Agreement also contains a restrictive covenant. It states, "[t]he senior executive shall not, directly or indirectly, engage in or assist others to engage in the same or similar competitive business as the Company within 2 years from the date of termination." JA90. Similarly, it states, "[w]ithin 2 years from the date of termination of senior executives, they shall not hold a position or hold a part-time job in an organization with similar business and competitive relationship with the Company or accept the employment of individuals with similar business and competitive relationship with the Company." *Ibid*. The Cadres Agreement specified that competitive businesses include those involved in antibody preparation services, sequencing of AbSeqtm antibodies, antibody drug development services, and proteomics services. *Ibid*.

After being employed for approximately two and a half years, in May 2017, the parties agreed to terminate Dr. Zhang's employment. JA109. Like many times in the past, Plaintiff reminded Dr. Zhang of her obligation not to compete. She signed an Employment Separation Certificate reinforcing her obligation not to compete. *Ibid.*

### 3. Dr. Zhang Co-Founds MtoZ to Compete

In September 2017, just four months after ending her employment, Dr. Zhang and another former employee of Abace (Long Li) established MtoZ to compete with Plaintiff in the United States. MtoZ is a Delaware corporation with its principal place

4

of business located in Cambridge, Massachusetts. Dr. Zhang is an owner, director, and officer of the company. JA112, 142-43.

Dr. Zhang created MtoZ's website to offer competing products and services for sale, and it went live in 2018. JA138-39. MtoZ offers services in the areas of proteins, antibodies, and proteomicsJA146-48; http://www.mtoz-biolabs.com/ and https://www.abace-biology.com/. These are some of the very same areas that are identified as competitive activities in the Cadres Agreement. JA90, 146-48; https://www.abace-biology.com/.

The parties do not dispute that MtoZ competes with Plaintiff. As Dr. Zhang testified during her deposition:

Q.   In this employment certification, separation certificate that you signed [JA109]…, it asks you to please comply with the relevant provisions of the agreement on confidentiality and non-competition.

Did you comply with that agreement?

A.   … No, No…..

Q.   So the answer to my question is no, correct?

A.   Yeah….

[JA133]

Q.   [D]id you comply with the non-competition agreement after you left the company?

And I think our answer was no, correct?

A.   Yes.

Dr. Zhang began competing with Plaintiff within months of her separation from Plaintiff, well before the two year period in the Cadre Agreement elapsed. She never gave Plaintiff notice that she wished to be released from her obligations under the numerous employment agreements she signed with Plaintiff. Her only communications were with former employees or representatives of the company, and none were on the subject of Plaintiff's business. JA152-53; JA121, 124-26.

**B.    Relevant Procedural History and Rulings Presented for Review**

The operative pleading is the Second Amended Complaint filed October 18, 2022 (the "Complaint") JA27. The Complaint asserts claims against Dr. Zhang for Breach of Contract (Count I) and Breach of Fiduciary Duty (Count II), against both Dr. Zhang and MtoZ for Unjust Enrichment (Count III) and Civil Conspiracy (Count IV), and against MtoZ for Tortious Interference (Count V). JA27, ¶¶ 57-78.

Abace moved for summary judgment on October 16, 2023. Defendants cross-moved for summary judgment on November 17, 2023. After oral argument, the District Court granted the Defendants' cross-motion for summary judgment. JA202.

Plaintiff filed its notice of appeal on April 26, 2024 and its Amended Notice of Appeal on May 9, 2024. JA23, 25.

## IV.   SUMMARY OF THE ARGUMENT

Defendant Chunhong Zhang acknowledges that she signed multiple agreements with Abace that prohibited her from competing. Despite doing so, almost immediately upon the termination of her employment, she formed Defendant MtoZ Biolabs, Inc. ("MtoZ") to engage in the very activities that she acknowledges the agreements prohibit her from undertaking. Dr. Zhang was asked multiple times during her deposition whether she was in breach of the agreements. She conceded that she was. In her words, "Q: Did you comply with that agreement? A: … No, no. Q: So the answer to my question is no, correct? A: Yeah…."

In defense, Dr. Zhang asserts under Chinese law, which the parties agree governs, she is permitted to compete even though her contract prohibits her from doing so. She claims that she is relieved of her contractual obligations because Abace did not pay her post-employment compensation that she argues Chinese law requires. This is no defense. Chinese courts have rejected this very same argument as they require former employees to adhere to their restrictive covenants unless and until the non-competition agreement is rescinded. Plaintiff's expert, Xibai Gao, Esq., submitted a Declaration supporting this Motion explaining the Chinese court system and attaching analogous decisions of Chinese courts.

Thus, based upon the undisputed fact that Dr. Zhang competed with Plaintiff during the restricted period, and because these agreements are enforceable under

Chinese law, Plaintiff respectfully submits that the district court erred by granting Defendants' motion for summary judgment. The decision below should be reversed.

## V.    ARGUMENT

### A.    Standard of Review

The District Court's grant of summary judgment is reviewed *de novo*. *Brandt v. Fitzpatrick*, 957 F.3d 67, 74 (1st Cir. 2020). The Court should draw all reasonable inferences in Defendants' favor, but should not "draw unreasonable inferences or credit bald assertions, empty conclusions," or "rank conjecture." *Id*. at 75 (quoting *Pina v. Children's Place,* 740 F.3d 785, 795 (1st Cir. 2014)). Summary judgment is appropriate where, as here, "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). To withstand summary judgment, the non-moving party must present affirmative evidence showing a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 249-52.

### B.    Plaintiff Demonstrated that Dr. Zhang Competed In Violation of the Agreements.

The undisputed facts show that Dr. Zhang entered into agreements not to compete with Plaintiff, and that she breached her Agreements by competing. Only

8

four months after leaving Plaintiff's employment, Dr. Zhang co-founded and became employed by Defendant MtoZ. Like Plaintiff, MtoZ offers services in the areas of proteins, antibodies, and proteomics. All of these are identified as competitive activities in certain of Dr. Zhang's Agreements. Moreover, at her deposition, Dr. Zhang admitted her breach. JA133. The issue on this appeal is whether Plaintiff may recover for Dr. Zhang's breach, as she claims that her agreements are unenforceable.

It is indisputable that Dr. Zhang signed and entered into the Cadres Agreement. JA129. Now, when it is convenient, Dr. Zhang is disavowing that she was ever a Cadre – or senior employee. Dr. Zhang argued that only senior executives (and those with confidential information) can be bound by restrictive covenants in Chinese law, but this argument mistakenly presupposes the conclusion that she is not a senior executive. The District Court, however, chose to take Dr. Zhang at her word despite her obvious biases and misleadingly compared the roles that a senior executive served at Abace with unrelated companies, despite the fact that she signed an Agreement indicating that she was a Cadre – explicitly defined by the Agreement as a senior executive.

In the Cadres Agreement, Dr. Zhang agreed that she would not "engage in or assist others to engage in the same or similar competitive business as the Company within 2 years from the date of termination," and "within 2 years from the date of termination" she would not "hold a position or hold a part-time job in an organization

9

with similar business and competitive relationship with the Company or accept the employment of individuals with similar business and competitive relationship with the Company." JA90. Dr. Zhang admits she signed this agreement and that it restricted her right to compete. JA129. This agreement is indisputably enforceable under Chinese law.

In addition, in the Confidentiality and Non-Competition Agreement, Dr. Zhang agreed not to "engage in or assist others to engage in the same or similar or competitive business as [Abace]," and "shall not hold a post … in an organization with similar business and competitive relationship with [Abace]." JA52. The noncompetition clause of the Confidentiality and Non-Competition Agreement is therefore enforceable with a two-year duration.

## C. Plaintiff Demonstrated that Dr. Zhang's Violation of the Agreements Is Actionable Under Chinese Law.

### 1. The Court Should Continue to Apply Chinese Law to the Agreements.

The parties agreed that Chinese law should apply to Plaintiff's claims, as Plaintiff is a Chinese company, Dr. Zhang resided in China when employed by Plaintiff, and Dr. Zhang signed the Agreements in China. "When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry." *In re Newport Plaza Assocs., LP*, 985 F.2d

640, 644 (1st Cir. 1993); *see Shimizu Corp. v. Dow Roofing Sys., LLC*, 2013 U.S. Dist. LEXIS 139260, *22-25 (D.Mass. Sept. 27, 2013) (same).

Plaintiff's expert, Xibai Gao, Esq., explained the Chinese legal system in declarations submitted to the District Court, citing authorities which govern this dispute and explaining why they do. Dr. Zhang, however, argued to the District Court that only "Guiding Cases" from the Supreme People's court are precedential. She cited an internet website of the Judiciaries Worldwide, Federal Judicial Center, in support of her assertion.[2] The District Court adopted her argument, affirmatively citing the authority in its decision. ADD 005. No published or unpublished case in the United States, to our knowledge, cites to "Judiciaries Worldwide," nor did the District Court conduct any analysis of the same.

Judiciaries Worldwide identifies the "Guiding Opinions" rule as requiring courts to search "similar cases" – previous cases with analogous fact patterns or legal issues. The rule directs courts to search four categories of cases: Guiding Cases issued by the Supreme People's Court ("SPC"), model SPC judgments, ***reference cases issued by provincial level higher people's courts, and judgments of the next higher and same-level courts.*** *Id*. Yet Dr. Zhang did not cite decisions that by her own analysis are precedential under this rule, and the District Court erred when it relied upon those decisions (as described in more detail below).

---

[2] https://judiciariesworldwide.fjc.gov/country-profile/china.

## 2. The District Court Rejected Numerous Chinese Court Cases, From Lower Courts to Higher Courts, Finding Agreements Similar to Dr. Zhang's Enforceable.

Applying Chinese law, the Agreements are enforceable.

The District Court ruled that Dr. Zhang's agreements not to compete are per se unenforceable because some did not specify a temporal length or geographic scope. It erred because the Cadre Agreement specifies its scope, an agreement which should be enforced. Moreover, the District Court also erred when it determined that Chinese law invalidates the other Agreements which do not specify scope.

There can be no argument that the parties did not agree to a specific term, as the Cadres Agreements both set forth the duration of the restriction with no geographical limitation. JA90, (Art. III(6), "the senior executive shall not directly or indirectly, engage in or assist others to engage in the same or similar or competitive business as the Company within 2 years from the date of termination"; JA281, (Article IV(1)). For this reason alone, the District Court erred when it determined all the Agreements were unenforceable for not specifying the scope.

As for the other Agreements that do not contain any limitations, the record shows that Dr. Zhang seeks to render them unenforceable based upon clerical errors. Those Agreements contained blanks for the temporal length to be inserted, and those blanks were not completed when the Agreements were signed. JA47, 60, 85. Not unlike American law, Chinese law also accounts for clerical errata, human errors,

and inadvertent omissions. Logically, in the event that a clerical error occurs – such as in the case at bar – the result is not the drastic result of voiding a contract in its entirety.

Numerous Chinese law authorities support this proposition. Articles 510 and 511 of the Civil Code of the People's Republic of China set forth the overarching principle that if an agreement is unclear on matters such as remuneration, compensation, method of performance, or burden of performance (among other terms) are unclear, then a mechanism applies to resolve the issue. JA1904-05. The Articles do not state that the contract becomes void, as Dr. Zhang advocates.

In addition, under Article 38 of The Minutes of the Symposium on Legal Implementation Issues in Labor Dispute Cases by the Beijing High People's Court and the Beijing Labor Dispute Arbitration Committee, "if the duration of the non-competition clause is not agreed upon by the employee and the employer, it should be determined through negotiation between both parties. If they cannot reach an agreement through negotiation, the maximum duration of the restriction should not exceed two years." JA1898-99. The statutory maximum imposed by Article 38 operates in tandem with Article 24 of the Chinese Labor Contract Law, which provides that "The scope, territory, geographical region, and duration of non-competition restrictive covenant shall be agreed between up to the employer and the employee worker to agree upon; and the non-competition restrictive covenant

agreement shall not violate the provisions of laws and regulations." JA1899, JA1926 [*See* JA350]. Put differently, someone who seeks to dispose of a restriction merely because the duration was left blank is not given a pass.

The District Court also erred when it addressed Dr. Zhang's argument that the Agreements must identify the amount due for post-employment compensation. The Supreme Court of China provides official judicial interpretation on how to calculate the post-employment compensation in the absence of such a clause in the governing agreement. Article 36 of The Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law in Labor Dispute Cases (IV) provides "When the parties have agreed upon non-competition restrictions in the labor contract or confidentiality agreement, but have not agreed to provide economic compensation to the worker after the termination or expiration of the labor contract, and the worker has fulfilled the non-competition obligations, and requests the employer to pay economic compensation on a monthly basis at 30% of the worker's average monthly wage in the twelve months before the termination or termination of the labor contract, the People's Court shall support this request. If the 30% of the average monthly wage specified in the preceding paragraph is lower than the minimum wage standard at the place where the labor contract is performed, payment shall be made according to the minimum wage standard at the place where the labor contract is performed." JA1897-98, 1908, 1911.

The aforementioned Article 38 further provides that "If an employer and an employee have agreed upon a non-competition clause in the labor contract or confidentiality agreement but have not reached an agreement on the payment of compensation or specific payment standards, this should not be a basis for deeming the non-competition clause invalid. During the existence of the employment relationship or upon the termination or expiration of the labor contract, the parties can remedy this through negotiation. If they cannot reach an agreement through negotiation, the compensation amount can be determined at 20% to 60% of the employee's last year's salary before the termination of the labor relationship. If the employer explicitly states that they will not pay compensation, the non-competition clause will not be binding on the employee." JA1898-99, JA1926.

Chinese caselaw from a Beijing appellate court (the equivalent to the circuit court that would govern this dispute) supports these results as well. In *Yu Kai v. Juneng Industrial Co. Ltd.*, Yu Kai engaged in business in the United States in competition with Juneng Industrial Co. Ltd. ("Juneng"), Yu Kai's former employer in China. In the judgment, the court held that Yu Kai violated the non-compete agreement between Yu Kai and Juneng, even though the agreement did not provide the geographic area scope because, "If the contract does not specify the geographical scope, it shall be deemed to be worldwide." JA1899-1900, 1929. Similarly, a recognized authority that governs courts in Beijing states, "If an employer and an

employee have agreed on a non-compete clause in the labor contract or confidentiality agreement, but have not agreed on the payment or specific payment standards for compensation, this should not be considered as rendering the non-compete clause invalid." JA1898-99. Only if an employer explicitly states that it will not pay compensation, then and only then is an employee free to compete. *Ibid*.

Thus, the District Court erred when it determined that the Agreements are unenforceable.

**3.     The District Court Erred When It Determined Chinese Law Permitted Dr. Zhang to Compete Because She Was Not Paid Post-Employment Compensation.**

The District Court erred when it accepted Dr. Zhang's argument that, because Plaintiff did not pay her after her employment ended, Plaintiff may not seek to enforce its noncompetition agreement with her. Chinese law provides that the failure to pay an individual during the noncompetition term does not <u>automatically</u> invalidate a noncompetition provision as Dr. Zhang argues.  Rather, the individual must give notice to her former employer that the noncompetition provision is no longer valid, and the individual intends to compete, <u>before</u> competing, which Dr. Zhang concedes she did not do. *See* JA1901-03, 159-163.

In *Ding Fan v. Shenzhen Speed Tech Co., Ltd*., the court held: "even if the employer fails to pay the economic compensation due to its reasons, the relevant non-competition agreement remains binding on both parties until the employee

requests its dissolution in accordance with the law." JA1901-02, 1904; JA160-61; JA165. Likewise, in *Zhang, Guoping v. Shanghai Dingtian Fashion Technology Co., Ltd*., the court held that because the former employee "did not rescind the non-competition agreement based on Dingtian Fashion Company's failure to pay the non-competition compensation, this agreement still binds both parties." The court further held that despite the former employee's claims that "Dingtian Fashion Company did not pay the non-competition compensation," that defense does not negate his obligation to fulfill the non-competition agreement as per the contract." JA1902-03, 1908; JA161-62; JA169. And in *Li Binghui v. Huizhou Qiangjun Construction Co., Ltd*., the court held that even though the former employer "did not provide economic compensation during the non-compete period, the court believes the absence of a specified compensation standard for non-compete does not affect the validity of the contract." JA1903, 1911; JA162-63; JA177.

Dr. Zhang does not dispute that these cases contradict her position that her agreements are automatically void. Instead, she argues that the cases constitute the "minority position," when in fact she provides no support from either case law, statute, or expert opinion that this is the case. The authority she cites to claim the position is the "minority" is *China Construction Bank Co., Ltd. Anshan Branch* [JA1431], yet neither this case nor any other that Dr. Zhang cited state its decisions

constitute some majority position, nor do they dismiss the case law cited by Plaintiff as superseded or outmoded.

The District Court was thus required to determine which line of cases identifies the law that governs this dispute. Not unlike the United States, China is subdivided into smaller administrative provinces, with their own courts that are bound to make decisions pursuant to the law of that jurisdiction, much like courts in this district look to First Circuit law as authority. JA160, ¶ 14. Under the Agreements that identify Abace's designated location as the possible forum, if this dispute were adjudicated in China, it would be (and was initially) brought in Beijing. JA1900, ¶ 12. As Plaintiff's Chinese law expert declared, "Chinese law as applied by the courts in Beijing govern this dispute." JA1900, ¶ 11.

Beijing law is found in the final judgment decisions in *Li Meng and Beijing City Haidian District New Giant Training School*, Beijing City No. 1 Intermediate People's Court, and *Beijing Zhongke Dayang Tech. Dev. Co., Ltd. v. Chen and Others*. JA1901, ¶ 14; JA1945, 1967. In *Li Meng*, the Court held that a former employee breached the IP Protection and Non-Compete Agreement with her employer, even though the employer did not pay the non-compete compensation under the agreement because "the actual performance of the non-compete compensation did not affect the effectiveness of the non-compete clause." JA1954. Similarly, in *Beijing Zhongke Dayang Tech. Dev. Co., Ltd.*, the court enforced a non-

18

competition agreement even though the employer "acknowledged that it did not specifically pay [the former employee] a non-compete compensation…." JA1972-74. The District Court's reliance on other Chinese court decisions inconsistent with Beijing law was in error.

Thus, Dr. Zhang was not permitted to compete simply because she did not receive post-termination compensation.

### 4. The District Court Erred When It Determined Dr. Zhang Does Not Qualify As A Senior Personnel Who Is Bound Not To Compete.

It is indisputable that Dr. Zhang signed and entered into the Cadres Agreement. JA129. Now, when it is convenient, Dr. Zhang is disavowing that she was ever a Cadre – or senior employee – at Abace. Dr. Zhang argued that only senior executives (and those with confidential information) can be bound by restrictive covenants in Chinese law, but this argument mistakenly presupposes the conclusion that she was not senior personnel. The District Court, however, chose to accept Dr. Zhang's contention as undisputed fact.

Dr. Zhang, however, signed the agreement indicating that she was a Cadre – explicitly defined by the Agreement as a senior executive. Moreover, contrary to the District Court's conclusion, the record reflects that only employees that reach a senior level are offered a cadre agreement for signature. JA263-64 [18:18 – 19:2]; JA288-89 [21:22-22:2].. Thus, when Dr. Zhang was offered the Cadre Agreement for consideration not once but twice over time, and she signed the agreement on both

occasions, there is sufficient evidence in the record to support Plaintiff's assertion that her position should be considered one of a "senior personnel" required to abide by her agreement not to compete. Moreover, Dr. Zhang also had obligations to maintain confidentiality. Her Agreements reference those obligations to maintain confidentiality, and she subsequently used "information about our business, our customer and a lot of documents…" to compete. JA265-66 [34:22-35:1].

For either of these two reasons, she viewed in the light most favorable to Plaintiff and with allowable inferences, there is at a minimum a disputed issue of fact as to whether Dr. Zhang could be bound to her agreement not to compete either because she was sufficiently senior or because she had access to confidential information.

## VI.   CONCLUSION

For the foregoing reasons, the District Court's judgment should be overturned in all respects.

Dated:     July 30, 2024                    Respectfully submitted,

BEIJING ABACE BIOLOGY CO., LTD.,

By its attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick, First Cir. No. 1135908
smelnick@littler.com

LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Telephone:      617.378.6000
Facsimile:      617.737.0052

Willard C. Shih, First Cir. No. 1212372
wshih@wilentz.com

WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone:      732.855.6016

## RULE 32(G) CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

28.1(e)(2)(B) because, excluding the parts of the brief exempted by Fed. R. App. P.

32(f), this brief contains 4,372 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

365 in 14-point Times New Roman.

/s/ Stephen T. Melnick
Stephen T. Melnick
First Cir. No. 1135908

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

Case No. 24-1424

BEIJING ABACE BIOLOGY CO., LTD.,

Plaintiff – Appellant,

CREATIVE DYNAMICS, INC.

Plaintiff,

v.

CHUNHONG ZHANG, MTOZ BIOLABS, INC.,

Defendants – Appellees,

ABC CORP. 1, d/b/a IgClue, d/b/a Ig-Clue; ABC CORPS. 2-10; JOHN DOES 1-10,

**Defendants.**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

## **CERTIFICATE OF SERVICE**

I, Stephen T. Melnick, hereby certify that on this 30th day of July 2024, I electronically filed the foregoing brief of Plaintiffs-Appellants with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel of record for Defendants-Appellees Chunhong Zhang and MtoZ Biolabs, Inc. are registered as ECF Filers and that they will be served by the

CM/ECF system:

Zackary L. Stillings
Frost Brown Todd LLP
10 W Broad St
Ste 2300
Columbus, OH 43215-0000
zstillings@fbtlaw.com

Erin Powers Severini
Frost Brown Todd LLP
301 E 4th St
Ste 3300
Cincinnati, OH 45202
eseverini@fbtlaw.com

Respectfully submitted,

BEIJING ABACE BIOLOGY CO., LTD.,

By its attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick, First Cir. No. 1135908
smelnick@littler.com

LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Telephone:      617.378.6000
Facsimile:       617.737.0052

Willard C. Shih, First Cir. No. 1212372
wshih@wilentz.com

WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone:      732.855.6016

# ADDENDUM

Memorandum & Order dated March 31, 2024 ............................................ ADD 001

Judgment dated April 30, 2024 .................................................................... ADD 027

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CREATIVE DYNAMICS, INC., and | * | |
| BEIJING ABACE BIOLOGY CO., LTD., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-11711-IT |
| | * | |
| CHUNHONG ZHANG, MTOZ BIOLABS, | * | |
| INC., ABC CORPS 2-10, and JOHN DOES | * | |
| 1-10, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

March 31, 2024

TALWANI, D.J.

Plaintiffs Creative Dynamics, Inc. ("Creative Dynamics") and Beijing Abace Biology

Co., Ltd. ("Abace") bring this action against Defendants Chunhong Zhang ("Zhang" or "Dr.

Zhang") and MtoZ Biolabs, Inc. ("MtoZ").[1] Plaintiffs allege that Dr. Zhang is their former

employee, and that after they terminated her employment, she breached non-compete,

confidentiality, and other provisions of agreements she had with Plaintiffs in forming MtoZ and

other entities. Pending before the court is Plaintiffs' Motion for Partial Summary Judgment [Doc.

No. 115] and Defendants' Cross Motion for Summary Judgment [Doc. No. 124]. For the

following reasons, Defendants' Motion [Doc. No. 124] is **GRANTED** and Plaintiffs' Motion

[Doc. No. 115] is **DENIED**.

---

[1] Plaintiffs also asserted claims against unidentified entities ABC Corp. 2-10 and individuals
John Does 1-10, Compl. ¶¶ 6–7, 67–68, 72, but have not identified these entities or individuals or
sought summonses to bring them before the court.

I.      **Procedural Background**

Plaintiffs initiated this action on September 17, 2020. Compl. [Doc. No. 1]. After

initiating this action, Plaintiff Abace applied for arbitration at the Chengdu Labor and Personnel

Dispute Arbitration Commission against Dr. Zhang on September 21, 2020, but the request was

denied. See Defs.' Aff. Mot. SJ, Ex. 1 [Doc. No. 125-1]. Abace subsequently filed a complaint

against Dr. Zhang in the Tongzhou District People's Court of Beijing on October 19, 2020. Id.

Abace asserted the same core facts in the Chinese Complaint [Doc. No. 125-1] as alleged here.

On March 10, 2021, Abace filed an application to withdraw the case; on March 11, 2021, the

Tongzhou District People's Court allowed it. Defs.' Aff. Mot. SJ, Ex. 2 [Doc. No. 125-2].

Neither Creative Dynamics nor MtoZ was a party to the Chinese proceedings.

Plaintiffs' Second Amended Complaint ("Complaint") [Doc. No. 91], filed October 18,

2022, brings claims against Dr. Zhang for Breach of Contract (Count I) and Breach of Fiduciary

Duty (Count II), against both Zhang and MtoZ for Unjust Enrichment (Count III) and Civil

Conspiracy (Count IV), and against MtoZ for Tortious Interference (Count V). See Compl. 9–13

[Doc. No. 91]. Plaintiffs' pending Motion for Partial Summary Judgment [Doc. No. 115]

requests entry of judgment on Count I and is supported in part by the Declaration of Xibai Gao,

Esq. [Doc. No. 117]. Defendants' pending Cross Motion for Summary Judgment [Doc. No. 124]

requests entry of judgment in their favor on all five counts.[2] Defendants also filed a Motion to

---

[2] Defendants did not file their statement of material facts in support of their Cross Motion for
Summary Judgment [Doc. No. 124] as a separate document. Plaintiffs contend that Local Rule
56.1 requires a separate statement, and that Defendants' Cross Motion should be denied for that
reason. See Pls.' Opp. to Defs.' Mot. SJ 2–3 [Doc. No. 134]. Local Rule 56.1 does require a
movant to file a concise statement of undisputed material facts and it is customary in this district
for the required statement to be filed as a stand-alone document. The court rejects Plaintiffs'
suggestion that Defendants' Cross Motion [Doc. No. 124] should be denied for not following this
practice, however, where Defendants' Memorandum in Support of Motion for Summary

Strike the Declaration of Xibai Gao and References to It in Plaintiffs' Motion for Summary

Judgment [Doc. No. 130] (the "Motion to Strike"). Following oral arguments, the court granted

in part and denied in part Defendants' Motion to Strike [Doc. No. 130]. See Order [Doc. No.

145].

## II.     Standard of Review

### A.     *Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the

governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir.

2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party.

Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied

in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-

moving party's claim or (2) by demonstrating that the non-moving party failed to establish an

essential element of its claim. Id. at 331.

---

Judgment [Doc. No. 129] does include the required concise statement of material facts under the
heading "Statement of Undisputed Material Facts," see generally Defs.' Mem. ISO Mot. SJ 3–9
[Doc. No. 129]. See United States v. Pfizer, Inc., 188 F. Supp. 3d 122, 128 (D. Mass. 2016)
(accepting plaintiffs' statement of facts, which was incorporated in their summary judgment
briefing, as responsive to Local Rule 56.1 requirements, finding that "where [it] provides
adequate references to the evidentiary record, [it does] not obscure the merits of the case").

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

The fact that the parties have filed cross motions does not alter these general standards. Rather, the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each side, the appropriate ruling. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (noting that cross-motions for summary judgment do not "alter the basic Rule 56 standard" but rather require the court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed").

**B.**     *Foreign Law*

The parties agree that Chinese law should govern the breach of contract claim. Pls.' Br. ISO Mot. Partial SJ 6 [Doc. No. 118]; Defs.' Mem. ISO Mot. SJ 11 [Doc. No. 129]. They dispute, however, what is required under that law. Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

Chinese law includes the Constitution of the People's Republic of China, statutes and decrees, administrative orders, and local rules. See China, Judiciaries Worldwide, https://judiciariesworldwide.fjc.gov/country-profile/china (last visited Mar. 22, 2024). In addition, the Supreme People's Court ("SPC"), the highest court in China, issues "judicial interpretations," which are also a source of Chinese law. Id.

The SPC has supervisory authority over three levels of local courts (high, intermediate, and basic). The local courts are not authorized to interpret or declare invalid any of these laws or regulations. Id.

The SPC introduced the "Guiding Opinions" rule in 2020 to encourage greater consistency across courts when legal principles are not clear. Id. The rule requires courts to search "Guiding Cases issued by the SPC, model SPC judgments, reference cases issued by provincial-level higher people's courts, and judgments of the next higher and same-level courts" for "similar cases" with analogous facts patterns or legal issues. Id. China does not recognize precedent but the Guiding Opinions rule "institutionalizes consideration of previously decided cases and frames prior cases as a contributing—not binding—factor in a court's judgment." Id.

The parties have provided statutes and interpretations by the SPC, see Defs.' Aff. ISO

Mot. SJ, Exs. 1–9 [Doc. Nos. 127-1 to 127-9], as well as local case law from various

jurisdictions, see Defs.' Aff. ISO Mot. SJ, Exs. 10–43 [Doc. Nos. 127-10 to 127-43]; Pls.' Aff.

Opp. to Defs.' Mot. SJ ("Gao Decl. Opp."), Exs. 6–8 [Doc. Nos. 133-6 to 133-8], which the

court has reviewed and finds relevant as set forth below.

### III.    Statement of Facts [3]

#### A.    *The Plaintiffs*

Creative Dynamics and Abace were each founded in 2004. Creative Dynamics is

headquartered in the State of New York and Abace is headquartered in Beijing, China. Pls.' Aff.

ISO Mot. Partial SJ, Ex. C, January Cadres Agreement 3 [Doc. No. 116-3]; Pls.' Aff. ISO Mot.

Partial SJ, Ex. B, Labor Contract 3 [Doc. No. 116-2]. Both companies offer research and

development resources to help develop new technology in the life sciences and pharmaceutical

industries. Pls.' Statement of Facts ¶ 1 [Doc. No. 119].[4]

#### B.    *Dr. Zhang's Employment with Abace*

On or about December 25, 2014, Dr. Zhang began her employment in Abace's Creative

Proteomics Department. Id. ¶ 2; Pls.' Aff. ISO Mot. Partial SJ, Ex. G, Excerpts from Dr. Zhang's

Deposition Excerpts ("Pls.' Zhang Dep. Tr.") 50:16–25 [Doc. No. 116-7]. Dr. Zhang's job title

was "supplier"; she was responsible for "find[ing] the product or service" requested and then

"get[ting] back to the sales person." Id. at 52:22–25. Dr. Zhang would "go online, like Google or

---

[3] The court begins (and ends) the discussion below with Defendants' Cross Motion for Summary Judgment [Doc. No. 124] and accordingly sets forth the facts and draws reasonable inferences in Plaintiffs' favor as the non-moving party.

[4] Defendants stipulate that they "largely do not dispute the facts as" presented in Plaintiffs' Statement of Undisputed Material Facts [Doc. No. 119]. Defs.' Reply Mem. ISO Mot. SJ 17 [Doc. No. 139].

Baidu [Chinese Google], and search which company can provide this [service] and then call them to ask them for the price and how long they can deliver this [service] and then give the supplier's price back to the sales person." Defs.' Aff. ISO Mot. SJ, Ex. A, Zhang Deposition Transcript Excerpts ("Defs.' Zhang Dep. Tr.") 54:14–18 [Doc. No. 126-1]. Dr. Zhang was also asked to write web pages associated with the Creative Proteomics Department on occasion. Id. at 54:2–11. For the duration of her employment, Dr. Zhang was paid her salary by Abace, and worked for Abace from Chengdu, Sichuan Province, China. Liu Deposition Transcript Excerpts ("Liu Dep. Tr.") 34:17–18, 33:15, Defs.' Aff. ISO Mot. SJ, Ex. C [Doc. No. 126-3]; Labor Contract 4 [Doc. No. 116-7]. She was never given a raise or promoted while employed by Abace. Defs.' Zhang Dep. Tr. 56:3–16 [Doc. No. 126-1].

      **C.**    ***The Agreements between Dr. Zhang and Abace***

Over the course of her employment, Dr. Zhang signed various agreements with Abace. At issue here is a Confidentiality and Non-Competition Agreement ("Non-Compete Agreement"), dated November 2, 2016, see Pls.' Aff. ISO Mot. Partial SJ, Ex. A [Doc. No. 116-1]; a Labor Contract, also dated November 2, 2016, id. Ex. B [Doc. No. 116-2]; and Creative Dynamics' Cadres Agreement—with Dr. Zhang signing one version on January 9, 2016 ("January Cadres Agreement"), id. Ex. C [Doc. No. 116-3], and another on November 2, 2016 ("November Cadres Agreement"), Defs.' Aff. ISO Mot. SJ, Ex. D [Doc. No. 126-4]. The only difference between the two versions of the Cadres Agreement is that the January 2016 version specifies a two-year term for senior executives' non-competition obligations, whereas the November 2016 version includes no durational limit on the obligation. Compare January Cadres Agreement 6, III.6 [Doc. No.

116-3] <u>with</u> November Cadres Agreement 12, III.6 [Doc. No. 126-4]. In determining whether the

Agreements are enforceable under Chinese law, the court considers both versions.[5]

In relevant part, the Non-Compete Agreement states that upon departure from Abace:

1. Party B [Zhang] shall not, directly or indirectly, engage in or assist others to engage in the same or similar or competitive business as Party A [Abace] within (blank) months (up to the next day of the (blank) month after he leaves the office).
2. Party B [Zhang] shall not hold a post or hold a part-time job in an organization with similar business and competitive relationship with Party A [Abace] or accept the employment of an individual with similar business and competitive relationship with Party A [Abace] within (blank) months from the date of resignation (until the next day of the month after resignation).

Non-Compete Agreement 6, III. Non-Competition, Article 2 Non-Competition Upon Departure

[Doc. No. 116-1].[6]

The Non-Compete Agreement states further: "This Agreement shall be consistent with

and subject to the interpretation of the laws of China." <u>Id.</u> at 7, V. Application of law and dispute

resolution.

The Labor Contract in turn, states that it "shall be implemented in compliance with (for

details, please refer to the Confidentiality and Competition Prohibition Agreement)." Labor

Contract 7 [Doc. No. 116-2].

The Cadres Agreement states that it "applies to all current employees of Creative

Dynamics and CD Biosciences (CD Inc), i.e., all current employees of the company" as well as

"the former employee who has signed a non-compete agreement." January Cadres Agreement 4

[Doc. No. 116-3]. The Cadres Agreement also identifies "senior cadres" and "senior executives,"

assigning additional rights and obligations to each. <u>Id.</u> Senior cadres are defined as "the first and

---

[5] Where the provisions are the same, the court cites to the January Cadres Agreement.

[6] The Non-Compete Agreement also contains certain confidentiality obligations required of the employee, <u>see</u> Non-Compete Agreement 4–6 [Doc. No. 116-1], but the <u>Second Amended Complaint</u> [Doc. No. 91] does not allege a breach of those obligations.

second level leaders of each Division, i.e., those position[s] higher than the head of the battle group)" and senior executives are personnel who "exercise the right of operation and management," can "employ or dismiss subordinates," and "transfer personnel," among other things. Id.

The non-compete obligations of senior executives, as recited in the January Cadres Agreement, are:

> (1)    The senior executive shall not, directly or indirectly, engage in or assist others to engage in the same or similar or competitive business as the Company within 2 years from the date of termination.
>
> (2)    Within 2 years from the date of termination of senior executives, they shall not hold a position or hold a part-time job in an organization with similar business and competitive relationship with the Company or accept the employment of individuals with similar business and competitive relationship with the Company.
>
> (3)    Following the termination of the senior executive, he shall not solicit any employee of the Company to take a position or part-time job in an organization with similar business and competitive relationship with the Company or accept the employment of a competitor.

Id. at 6. According to an Abace representative, employees sign the Cadres Agreement after reaching a certain level within Abace. Liu Dep. Tr. 18:18–19:4 [Doc. No. 126-3] ("For example, when I [was] first employed by Abace, I [] signed the contract, and when I worked there and reached a certain level, the fifth level, I [had] to sign another contract, [the Cadres Agreement].").

**D.    *Termination of Dr. Zhang's Employment and Formation of MtoZ***

Dr. Zhang's employment was formally terminated on May 1, 2017. Pls.' Statement of Facts ¶ 12. On that date, Dr. Zhang signed an Employment Separation Certificate. Id. ¶ 13. The Certificate asks Dr. Zhang to "please comply with the relevant provisions of the 'Agreement on Confidentiality and Non-competition.'" Pls.' Aff. ISO Mot. Partial SJ, Ex. E, Employment Separation Certificate [Doc. No. 116-5]. The Certificate does not specify which provisions are

"relevant provisions," does not reference the Cadres Agreement, and does not provide for post-employment compensation. Id.

In September of 2017, Dr. Zhang and Long Li, another former employee of Abace, formed MtoZ, a Delaware corporation with its principal place of business in Massachusetts. Pls.' Statement of Facts ¶ 14 [Doc. No. 119]. MtoZ offers services in the areas of proteins, antibodies, and proteomics. Id. ¶ 16.

## IV.    Discussion

### A.    *Creative Dynamics' Claims*

The five counts in the Second Amended Complaint [Doc. No. 91] do not differentiate between Plaintiffs Creative Dynamics and Abace. Despite Plaintiffs' allegations that "Defendant Zhang entered into Agreements with Plaintiffs," Compl. ¶ 58 [Doc. No. 91], all relevant agreements and contracts were signed by Plaintiff Abace only, see Non-Compete Agreement 7 [Doc. No. 116-1]; Labor Contract 13 [Doc. No. 116-2]; January Cadres Agreement 9 [Doc. No. 116-3]; November Cadres Agreement 17 [Doc. No. 126-4]. Plaintiffs offer no evidence to support the assertion that Dr. Zhang entered into a contract with Creative Dynamics, and at oral argument, Plaintiffs' counsel conceded that Creative Dynamics has no independent claims against Defendants. Accordingly, Defendants' Cross Motion for Summary Judgment [Doc. No. 124] is granted on all counts with respect to Plaintiff Creative Dynamics.

### B.    *Abace's Breach of Contract Claim Against Dr. Zhang*

Defendants ask the court to find that Dr. Zhang's Agreements with Plaintiff Abace are unenforceable under Chinese law based on at least four defects: (1) "[o]nly senior personnel may be subject to non-compete provisions, and anyone not a 'senior executive' may not be bound by them"; (2) "[w]here a purported non-compete provision leaves key provisions blank, then [it]

10

was never a completed contract that can be enforced"; (3) non-compete provisions are not enforceable where they don't "identify an amount to be paid to the employee post-termination for their continued non-compete obligations"; and (4) non-compete agreements are rendered unenforceable when an employer fails to pay an employee post-termination compensation for three months. Defs.' Mem. ISO Mot. SJ 1–2 [Doc. No. 129]. Abace urges the court to find that the agreements are enforceable under Chinese law, and that by forming MtoZ, Dr. Zhang breached the Agreements. Pls.' Br. ISO Mot. Partial SJ 7 [Doc. No. 118].

The undisputed evidence mandates a conclusion that the non-compete provisions of the Agreements are unenforceable against Dr. Zhang under the governing law for four independent reasons.

### 1.    Non-Compete Agreements Apply Only to Senior Personnel

Under Chinese law, non-compete agreements are only applicable to senior management personnel, senior technical personnel, and those with both confidentiality obligations to the employer and access to confidential information not accessible to the public or the average employees. Hunan Mingjing New Bldg. Materials Co., Ltd. v. Zhang Yongxing, No. 4486, at 10 (Changsha Hunan Interm. People's Ct. June 13, 2022) [Doc. No. 127-10] (quoting Article 24 of the Labor Contract Law of the People's Republic of China ("Labor Contract Law") and holding that an employee did not violate a "Confidentiality and Non-compete Agreement" because the information he accessed, such as customers' personal WeChat information, was within the normal scope a salesperson would have, and no evidence was submitted showing he had access to information beyond that normal scope). As an illustration, in Sichuan Henggu Construction Eng'g Testing Co., Ltd. v. Li Lingjie, No. 953 (Luzhou City Sichuan Interm. People's Ct. July 18, 2022) [Doc. No. 127-19], an intermediate court in Sichuan Province did not enforce a non-compete signed by the defendant, an "ordinary employee," because the plaintiff-employer failed

11

to provide evidence that the defendant, who only engaged in "ordinary testing work," was senior personnel or had confidentiality obligations pursuant to Article 24 of the Labor Contract Law. Id. at 6; see also Suzhou Geyou Carbon New Material Co., Ltd. v. Yu Denghu, Nos. 9139 & 9140, at 5 (Suzhou City Jiangsu Interm. People's Ct. Dec. 11, 2016) [Doc. No. 127-17] (holding defendant was an "ordinary employee" of plaintiff-company and was not subject to a non-compete obligation because all technology he accessed in his daily work was within the public domain and did not include trade secrets).

Defendants argue that, although Dr. Zhang signed the Cadres Agreement, she is not sufficiently senior for any of the non-compete provisions to be enforced against her. Her testimony supports this claim, as do the definitions of "senior executive" and "senior cadre" provided in the Cadres Agreement, on which Abace relies. Senior cadres are defined as "the first and second level leaders of each Division, i.e., those position higher than the head of the battle group." January Cadres Agreement 4 [Doc. No. 116-3]; November Cadres Agreement 10 [Doc. No. 126-4]. Senior executives are defined as employees who "exercise the right of operation and management," "can employ or dismiss subordinates," and "transfer personnel," among other things. January Cadres Agreement 4 [Doc. No. 116-3]; November Cadres Agreement 10 [Doc. No. 126-4]. Abace has not pointed to anything in the record to suggest that Dr. Zhang was a head of any "battle group," let alone a Division leader. Likewise, there is no evidence that Dr. Zhang enjoyed any of the rights included in the Cadres Agreement's definition of a senior executive. Meanwhile, the non-compete provision in both versions of the Cadres Agreement states that the "*senior executive* shall not, directly or indirectly, engage in or assist others to engage in" competitive activity. January Cadres Agreement 6 [Doc. No. 116-3] (emphasis added); November Cadres Agreement 12 [Doc. No. 126-4] (same).

Further, Dr. Zhang's job responsibilities do not put her in the category of personnel with access to the employer's confidentiality information. Nothing in the record indicates that she had knowledge or information not available to other employees or the public. Per Dr. Zhang's own deposition, the relevant details of which are not contradicted in the depositions of her superiors, her job responsibilities included "go[ing] online, like Google or Baidu [Chinese Google], [to] search which company can provide this [service] and then call them to ask them for the price and how long they can deliver this [service] and then give the supplier's price back to the sales person." Defs.' Zhang Dep. Tr., 54:14–18 [Doc. No. 126-1]. She also occasionally wrote web pages for the Creative Proteomic department and did "something related to customer service." Id. at 54:7–18; Li Deposition Transcript Excerpts ("Li Dep. Tr.") 22:12–20, Defs.' Aff. ISO Mot. SJ, Ex. E [Doc. No. 126-5]. Ms. Li also identifies herself as Dr. Zhang's superior, stating "and when I was promoted to the seventh level, she was promoted to the sixth level," establishing that Dr. Zhang was supervised by more senior personnel and offering no suggestion that Dr. Zhang supervised others. Li Dep. Tr. 21:23-22:2 [Doc. No. 126-5].

Abace does not dispute Dr. Zhang's job responsibilities as characterized in her deposition or point to any portion of the record indicating that Dr. Zhang was a "senior cadre" or "senior executive" within the contractual definition. Nor does Abace produce any evidence that Dr. Zhang's job provided her with any information not otherwise available to the public or other employees that would in turn subject her to a confidentiality obligation. Instead, Abace argues that by virtue of signing the Cadres Agreement, Dr. Zhang became a senior employee. Pls.' Opp. to Defs.' Mot. SJ 6 [Doc. No. 134]. "Now, when it is convenient, Zhang is disavowing that she was ever a cadre . . . doing so now does not change the fact that she signed an Agreement indicating that she was a Cadre – explicitly defined by the Agreement as a senior executive." Id.

at 6–7. Abace fails to address or explain the language in the Cadres Agreement that states it "applies to *all current employees of Creative Dynamics and CD Biosciences (CD Inc), i.e., all current employees of the Company*." January Cadres Agreement 4 [Doc. No. 116-3] (emphasis added); November Cadres Agreement 10 [Doc. No. 126-4] (same). If, as Abace suggests, signing the Cadres Agreement renders an employee a "cadre" (senior employee), and the agreement applies to all employees, then it follows that all employees must be senior employees. This goes against the plain language of the Cadres Agreement, which explicitly defines both a "senior executive" and "senior cadre."

Viewing the language of the Agreements in the light most favorable to Abace, there is but one conclusion this court can draw based on the evidence presented. Dr. Zhang was not sufficiently senior and did not have access to confidential information, and therefore under Chinese law could not properly be bound by a non-compete agreement.

> 2. *Non-Competition Agreements Must Specify a Temporal Length and Geographic Scope in Order to be Enforceable*

Additionally, under Chinese law, the temporal length and geographic scope of a non-compete provision must be specified in the agreement for it to be enforceable. Shanghai Aiyuan Semiconductor Equip. Co., Ltd. v. Luo Laizhong, No. 15965, at 6 (Pudong New Area Shanghai People's Ct. Mar. 27, 2023) [Doc. No. 127-33]. Further, where scope and duration of a non-compete *are* included in an agreement, they must still be within a reasonable range to avoid unreasonably restricting the rights of workers. Zhongshan Laser Ent. Co., Ltd. v. Xu Jun, No. 3271, at 4 (Zhongshan City Guangdong Interm. People's Ct. May 6, 2021) [Doc. No. 127-14] (citing Article 24 of the Labor Contract Law).

None of the agreements contain any limitations as to their geographic scope and neither the Non-Compete Agreement nor the November 2017 Cadres Agreement includes any

specificity with respect to the post-employment duration. See Non-Compete Agreement 6 [Doc. No. 116-1]; November Cadres Agreement 12 [Doc. No. 126-4]. Within Section III, Article II (Non-Competition Obligation Upon Departure) of the Non-Compete Agreement are spaces for filling in the number of months for which the ex-employee is subject to the non-compete, but those spaces have been left blank. Non-Compete Agreement 6 [Doc. No. 116-1]. Similarly, the November Cadres Agreement simply provides for non-compete limitations "within years from the date of termination of senior executives" without limitation on that number of years. November Cadres Agreement 12 [Doc. No. 126-4].

Abace contends that Chinese law will enforce non-compete agreements with missing terms. It argues that Chinese law accounts for "clerical errata, human errors, and inadvertent omissions" and that blanks in an agreement do not render it ineffective. Pls.' Opp. to Defs.' Mot. SJ 3–6 [Doc. No. 134]; Gao Decl. ¶ 6 [Doc. No. 117]. Abace offers no evidence that the blanks in the Non-Compete Agreement and the absence of a term limiting the duration of the non-compete are on account of error or mistake. Rather, Abace points to various Chinese cases and statutes that support enforcement of a non-compete agreement that was missing scope, term, or post-termination compensation, but does not provide any case supporting enforcement where more than one term is blank, and no post-termination compensation has been paid.

For example, Abace relies on Yu, Kai v. Juneng Industrial Co., Ltd., No. 4503 (Beijing No. 1 Interm. People's Ct. Dec. 15, 2008) [Doc. No. 133-6], for the proposition that a Chinese court would recognize Dr. Zhang's agreements with Abace as valid. Pls.' Opp. to Defs.' Mot. SJ 6 [Doc. No. 134]. In Yu, Kai, a local court—namely an intermediate appeals court in Beijing— enforced a non-compete agreement despite the parties having not agreed on a geographical scope. Yu, Kai, at 2. According to Abace's expert, the court in Yu, Kai held that where a contract

"does not specify the geographical scope, it shall be deemed to be worldwide." <u>See</u> Gao Decl. Opp. ¶ 10 [Doc. No. 133].

However, the appeal in <u>Yu, Kai</u> was focused on damages calculations and evidentiary issues—*not* the validity of the non-compete. <u>See</u> <u>Yu, Kai</u>, at 3 (summarizing appellant employee's arguments) [Doc. No. 133-6]. In fact, what Abace's expert portrays as the <u>Yu, Kai</u> court's holding is from the section of the opinion where the court was merely summarizing the lower court's findings. <u>Compare</u> Gao Decl. Opp. ¶ 10 [Doc. No. 133], <u>with</u> <u>Yu, Kai</u>, at 2 [Doc. No. 133-6]. Even so, <u>Yu, Kai</u> is distinguishable because the non-compete at issue included the industry scope and duration for which it would apply, the agreement stipulated compensation (which was paid), and the employee was found to have had knowledge of company technical secrets. <u>Yu, Kai</u>, at 2 [Doc. No. 133-6]. The only blank was the geographic scope. <u>Id.</u> Here, the Non-Compete Agreement is blank with respect to time, geography, *and* compensation. Non-Compete Agreement [Doc. No. 116-1]. And although one version of the Cadres Agreement includes a non-competition period of "2 years from the date of termination," it too does not specify the geographic scope or the amount of post-termination compensation to be paid to Dr. Zhang. January Cadres Agreement 6 [Doc. No. 116-3].

Abace's suggestion that the non-compete be applied "worldwide" is also inconsistent with Chinese laws requiring its scope and duration to be *reasonable*. <u>Zhongshan Laser Ent.</u>, at 4 [Doc. No. 127-14]. Chinese courts—including in the jurisdiction of Beijing where Abace is headquartered—have found it unreasonable for a company to require an employee not to compete with *all* subsidiaries and affiliated companies. <u>Straumann (Beijing) Med. Device Trading Co., Ltd. v. Song Nan</u>, No. 14055, at 16–17 (Beijing No. 3 Interm. People's Ct. Nov. 24, 2021) [Doc. No. 127-34]. For Abace to restrict Dr. Zhang's ability to seek employment outside

of China, effectively to avoid competing not with Abace but with Creative Dynamics, a company of unknown affiliation with Abace,[7] would go against Chinese law.

Abace's expert also points this court to Article 38 of the Minutes of the Seminar on the Legal Application Issues in Labor Dispute Cases organized by lower courts, namely the Beijing Higher People's Court and Beijing Labor Dispute Arbitration Committee (the "Seminar Minutes").[8] Gao Decl. Opp. ¶¶ 7–9 [Doc. No. 133]; id., Ex. 5, at 2 [Doc. No. 133-5]. Article 38 of the Seminar Minutes states that where parties have agreed to a non-compete clause but have not agreed upon the duration, it should be determined through negotiation, and if negotiations fail, the maximum duration should not exceed two years. Gao Decl. Opp, Ex. 5, at 2 [Doc. No. 133-5]. Abace reads this as imposing a duty on the court to pencil in a two-year duration where the non-compete agreement itself is silent. Pls.' Br. ISO Mot. Partial SJ 8–9 [Doc. No. 118].

But the record does not demonstrate that Article 38 of the Seminar Minutes requires a court to "blue-pencil a duration into a non-compete agreement." Defs.' Reply Mem. ISO Mot. SJ 9 [Doc. No. 139]. Abace does not offer any evidence that courts in China impose their own judgment to fill in blanks in non-competes, nor do they cite any authority requiring courts to do so—especially where there are *multiple* deficiencies in an agreement. Meanwhile, Defendants offer cases where Chinese courts have invalidated non-compete agreements with no duration, or durations exceeding two years. For instance, in Shanghai Aiyuan, the first-level court found a

---

[7] Plaintiffs have not pointed to anything in the record establishing the corporate relationship between Abace and Creative Dynamics.

[8] Plaintiffs' expert claims that the Seminar Minutes "at a minimum govern[] courts in Beijing." Gao. Decl. Opp. ¶ 7 [Doc. No. 133]. Although Abace is headquartered in Beijing, Dr. Zhang worked for Abace from another province, Sichuan. Labor Contract 4 [Doc. No. 116-2]. The court is not persuaded that Beijing decisions control over those of other provinces, and instead, considers the similarities of the facts and persuasiveness of the legal reasoning as applied to the case at hand.

non-compete agreement, which was missing both time and geography terms (as well as an

agreed-upon compensation rate, to be discussed further <u>infra</u> Section IV.B.3), to be "lack[ing]

legal basis" and subsequently did not enforce it against the employee-defendant. <u>Id.</u> The court

noted that the missing terms indicated "the parties did not actually agree on the non-competition

clause." <u>Id.</u>; <u>see also</u> <u>Gansu Kelingbeier New Energy Tech. Co., Ltd. v. Cao Ming</u>, No. 5171, at

9 (Langzhou City Gansu Interm. People's Ct. Dec. 20, 2021) [Doc. No. 127-23] (finding a non-

compete with a duration of 5 years invalid).

      Abace has not introduced sufficient evidence or legal authority to demonstrate that its

contracts with Dr. Zhang are enforceable under Chinese law. As such, the court finds that the

blanks in the Agreements with respect to temporal length and geographic scope render them

unenforceable under Chinese law.

           *3.  Employers Must Pay Employees Compensation in Exchange for Non-Compete*
                *Agreements and the Non-Compete Agreements Must Specify the Compensation to*
                *be Paid Post-Employment*

      Under Chinese law, employers are required to pay their employees post-termination

compensation in exchange for compliance with non-compete agreements. Article 23 of the Labor

Contract Law [Doc. No. 127-2]. When an employer fails to pay a former employee the agreed-

upon economic compensation, the non-compete agreement is unenforceable as a matter of law.

<u>INEXA (Nantong) Refined Interior Materials Co., Ltd. v. Yuan Jian</u>, No. 02658, at 8 (Nantong

City Jiangsu Interm. People's Ct. May 4, 2016) [Doc. No. 127-37]. The amount to be paid to the

employee post-termination must also be specified in the non-compete agreement, otherwise the

agreement is invalid. <u>Jishi Street Dance Club v. Zhan Wei</u>, No. 5967, at 7 (Ningbo City Zhejiang

Interm. People's Ct. Mar. 17, 2022) [Doc. No. 127-21]; <u>Beijing Golden Capital Gen. Aviation</u>

<u>Co., Ltd. v. Gao Hui</u>, No. 3362, at 11 (Beijing No. 3 Interm. People's Ct. Mar. 29, 2021) [Doc.

No. 127-22].

a.   The Agreements Did Not Specify the Economic Compensation to be Paid to Dr. Zhang

To be enforceable, Chinese law requires non-compete agreements to include an agreement on economic compensation and specify the amount to be paid to the employee in exchange for their compliance after termination. Jishi Street Dance Club, at 7 [Doc. No. 127-21] ("[T]he agreed content [] are all provisions that the appellee [employee] should have confidentiality obligations and non-competitions, and there is no relevant agreement on economic compensation during the non-competition period. It is a case of the *employer exempting himself from his statutory responsibilities and excluding the rights of workers, and should be deemed invalid*.") (emphasis added). Failure to include such an agreement renders the non-compete ineffective and unenforceable against the employee. Beijing Golden Capital Gen. Aviation, at 11 [Doc. No. 127-22] ("[T]here was no agreement on economic compensation for non-competition restriction, so the agreement on non-competition restriction concluded by and between the two parties had no legal effect on the employee.").

The only mention of post-termination compensation to Dr. Zhang is in Chapter 9, Article 32 of the Labor Contract, which stipulates the following:

> If Party A terminates this Contract with Party B under the condition stipulated in Article 46 of the Labor Contract Law of the People's Republic of China, Party A shall pay Party B economic compensation according to Article 47 of the Labor Contract Law of the People's Republic of China as well as local regulations.

[Doc. No. 116-2]. According to the undisputed facts, the parties terminated the Labor Contract according to conditions in Article 46(2) of the Labor Contract Law. Pls.' Statement of Facts ¶ 12 [Doc. No. 119]; Defs.' Aff. ISO Mot. SJ, Ex. 2 [Doc. No. 127-2]. However, nowhere in the Labor Contract, Cadres Agreement, or Non-Compete Agreement is an amount Abace is to pay Dr. Zhang during the non-competition period specified. See generally Non-Compete Agreement

19

[Doc. No. 116-1]; Labor Contract [Doc. No. 116-2]; January Cadres Agreement [Doc. No. 116-3]; November Cadres Agreement [Doc. No. 126-4].

Abace does not dispute that there was no post-termination compensation amount specified in the Agreements. Abace argues, based on the declaration of their expert, that Article 36 of The Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law in Labor Dispute Cases (I) ("The Interpretation (I)") provides an "official judicial interpretation on how to calculate the post-employment compensation if the non-compete misses such a clause." Pls.' Opp. to Defs.' Mot. SJ 5 [Doc. No. 134]; Gao Decl. Opp., Ex. 2 [Doc. No. 133-2]. The SPC's interpretations of Chinese laws are indeed binding on all lower courts in China.[9] Abace additionally relies on Article 38 of the Seminar Minutes to support its claim that Dr. Zhang breached a valid non-compete.

Though Abace contends that Article 36 of the Interpretation (I) means a court can, again, pencil in a term of the non-compete agreement where it has not been agreed upon by the parties, Pls.' Opp. to Defs.' Mot. SJ 5 [Doc. No. 134], this is not so. Article 36 does not *require* the court to read a compensatory amount into the agreement. Rather, it states that where "the worker has fulfilled the non-competition obligations, and *requests* the employer to pay economic compensation," *that* compensation can be calculated to be 30% of the employee's average monthly wage in the year before termination. Gao Decl. Opp., Ex. 2 [Doc. No. 133-2].

That this imposition of an amount of compensation and enforcement of the remainder of the contract is not mandatory is supported by Chinese caselaw. In Shenzhen Qian Hai Jing Wei Invest. Mgmt. Co., Ltd. v. Chen Shiwei, No. 4398 (Shenzhen Qianhai Cooperation Zone

---

[9] See China, Judiciaries Worldwide, https://judiciariesworldwide.fjc.gov/country-profile/china (last visited Mar. 22, 2024).

ADD 020

Guangdong People's Ct. July 1, 2021) [Doc. No. 127-36], the first-level court found a non-compete agreement to be ineffective because the plaintiff-employer "never communicated with the Defendant about the economic compensation during the competing period" and never "formulated the standard for determining the economic compensation." Id. at 10. The court based its decision on Articles 6 and 7 of The Interpretation of the Supreme People's Court on Several Issues Relating to Laws Applicable for Trial on Labor Dispute Cases (IV) ("The Interpretation (IV)" [Doc. No. 127-8]), holding that where there is no agreement on economic compensation, employees "ha[ve] the right to choose to assume the non-competition obligation . . . by their own commitment, and require [the former employer] to pay . . . [and t]hey also have the right to choose not to fulfill the noncompetition obligation." Shenzhen Qian Hai Jing Wei Invest. Mgmt. Co., at 10–11 [Doc. No. 127-36].

Abace also argues that Article 38 of the Seminar Minutes allows enforcement of the Agreements even where compensation is not specified. That Article states:

> If an employer and an employee have agreed upon a non-competition clause in the labor contract or confidentiality agreement but have not reached an agreement on the payment of compensation or specific payment standards, this should not be a basis for deeming the non-competition clause invalid. . . . [U]pon the termination or expiration of the labor contract, the parties can remedy this through negotiation. If they cannot reach an agreement through negotiation, the compensation amount can be determined at 20% to 60% of the employee's last year's salary before the termination of the labor relationship. If the employer explicitly states that they will not pay compensation, the non-competition clause will not be binding on the employee.

[Doc. No. 133-5]. But Abace has not proffered any evidence showing that it attempted to negotiate compensation with Dr. Zhang, either at the time of the termination of the Labor Contract, during the two years when it claims the non-compete was in effect, or at any time before initiating this suit three and a half years after Dr, Zhang's termination. The record is silent as to whether Abace ever explicitly told Dr. Zhang it would or would not pay compensation.

21

Regardless, this court does not interpret Article 38 of the Seminar Minutes to mandate this court to calculate a compensation amount on behalf of the parties and read it into their Agreements. See Shenzhen Qian Hai Jing Wei Invest. Mgmt., at 3 [Doc. No. 127-36]. This court interprets Article 38 in conjunction with Article 36: Article 36 provides the worker with an affirmative right to request compensation from a former employer for having complied with a non-compete, Article 38 provides different scenarios for the calculation of the compensation amount for an employee seeking such compensation.

In sum, the court finds that where the Agreements do not specify the economic compensation to be paid to Dr. Zhang post-termination, they are void and unenforceable as a matter of Chinese law.

> b.   Abace Did Not Pay Dr. Zhang After Her Employment Ended

Chinese law also requires that an employer actually pay their former employee the agreed-upon compensation in exchange for complying with a non-compete agreement. See INEXA (Nantong) Refined Interior Materials, at 8 [Doc. No. 127-37] ("It is also agreed that if INEXA Company fails to pay or underpays the economic compensation for keeping trade secrets to Yuan Jian, Yuan Jian is not obligated to preserve INEXA Company's trade secrets and adhere to the non-compete obligation."). Article 23 of the Labor Contract Law states:

> An employer and a worker may agree on keeping confidential[] the employer's commercial secrets and confidential matters in relation to intellectual property in a labour contract. Where a worker is obliged to keep confidentiality, the employer may agree with the worker in a labour contract or confidentiality agreement on a non-competition restrictive covenant and *agree that upon the rescission or termination of a labour contract, the employer shall grant the worker economic damages on a monthly basis during the non-competition restrictive covenant period.*

[Doc. No. 127-2] (emphasis added). The goal of this provision is to guarantee the "survival and normal life of the employee" since their freedom and employment rights are being restricted.

Sichuan Lishida Intelligent Lighting Tech. Co., Ltd. v. Yang Bo, No. 5869, at 7 (Chengdu City

Sichuan Interm. People's Ct. May 18, 2021) [Doc. No. 127-35] (voiding a non-compete

agreement under Article 23 of the Labor Contract Law because ex-employee was not paid

compensation after departure and finding that including post-termination compensation in an

employee's salary is against statutory requirements). Where an employer fails to pay the agreed-

upon post-termination compensation for three months, and the former employee requests

termination of the agreement, the Chinese courts "shall support [termination]." China

Construction Bank Corp. Ltd., Anshan Branch v. Huang Minghui, No. 1694, at 9 (Anshan City

Liaoning Interm. People's Ct. Aug. 15, 2022) [Doc. No. 127-27] (citing Article 8 of The

Interpretation (IV)) [Doc. No. 127-8]).[10]

The parties agreed that Dr. Zhang would be paid post-employment compensation, per

Chapter 9, Article 32 of the Labor Contract [Doc. No. 116-2]. Yet it is undisputed that Abace did

not compensate Dr. Zhang following the termination of her employment, and Abace does not

argue that it ever offered to pay her. See Pls.' Opp. to Defs.' Mot. SJ 7–9 [Doc. No. 134]; Defs.'

Mem. ISO Mot. SJ 23 [Doc. No. 129]. Rather, Abace again relies on the two declarations by its

expert on Chinese law (Gao Decl. [Doc. No. 117]; Gao Decl. Opp. [Doc. No. 133]) for the

proposition that failure to pay does not automatically invalidate a non-compete, and that Dr.

Zhang was required to give notice that she intended to void her non-compete covenant. Pls.'

Opp. to Defs.' Mot. SJ 7 [Doc. No. 134].

---

[10] "Where the parties concerned have agreed on competition restriction and economic
compensation in the labour contract or the confidentiality agreement, upon rescission or
termination of the labour contract, the employer does not pay economic compensation for three
months due to its own accord and the worker requests for rescission of the agreement on
competition restriction, the People's Court shall support the request." The Interpretation (IV) art.
8 [Doc. No. 127-8].

However, where an employer fails to pay post-termination compensation for three months, Chinese courts have found that the former employee sufficiently requests termination of a non-compete agreement by entering, or even forming, a new or competing company. See China Construction Bank Corp. Ltd., at 9 [Doc. No. 127-27] ("China Construction Bank has not paid economic compensation for non competition to Huang Minghui for more than three months, and its breach of contract is prior. Huang Minghui has in fact terminated the non competition agreement . . . on his entry in other companies); Dongguan Sainuo Adhesive Prods. Co., Ltd. v. Chen Xiaofeng, No. 7262, at 8 (Dongguan City Guangdong Interm. People's Ct. Dec. 6, 2021) [Doc. No. 127-29] ("[I]f Sainuo Company fails to pay Chen Xiaofeng economic compensation for non competition within three months after the termination of the labor contract, [his] establishment of a company with the same business scope as [the] Sainuo Company shall be deemed as his actual action to propose the termination of the non competition agreement"). Here, Dr. Zhang formed MtoZ more than four months after the termination of her employment with Abace, during which time Abace never paid her any compensation. Under Chinese law, by forming MtoZ four months after her termination, Dr. Zhang sufficiently requested termination of a non-compete agreement, even if one were to apply to her.

Abace relies on two Chinese cases for support, but those cases are distinguishable. In Li, Meng v. Beijing Haidian District New Giant Training Sch., No. 02713 (Beijing No. 1 Interm. People's Ct. Mar. 19, 2015) [Doc. No. 133-7], decided by an intermediate appellate court in Beijing, the court enforced a non-compete agreement. Id. at 10. However, the employer in Li Meng notified the employees of their intent to pay non-competition compensation, with specifics about the amount to be paid, and instructions on how and when to receive the compensation post-termination. Id. at 5. The employees, however, did not collect the compensation. Id.

24

Additionally, the court in Li Meng found the employees lied about their employment with a competing company, and "engaged in a notable form of concealing facts during the lawsuit." Id. at 7. Here, no post-termination compensation was paid, and Abace has raised no allegations that Dr. Zhang concealed her activity in forming a new company four months after her termination.

And in Beijing Zhongke Dayang Tech. Dev. Co., Ltd. v. Chen and Others, No. 5106 (Haidian District Beijing People's Ct. July 20, 2005) [Doc. No. 133-8], decided by a first-level court in Beijing, the employer continued to pay the employee his salary for six months following his resignation, and as a shareholder, director, and deputy general manager of the company, the employee's departure was "not normal." Id. at 8. Again, these facts distinguish Beijing Zhongke from this case, as there is no evidence that Abace ever paid Dr. Zhang following her termination, and as discussed, supra Section IV.B.1, Dr. Zhang was not a senior employee at either Abace or Creative Dynamics.

Abace's failure to pay Dr. Zhang for more than three months and her formation thereafter of MtoZ were sufficient to void both parties' obligations under the non-compete provisions of the parties' agreements under Chinese law. Therefore, even when viewing the record in the light most favorable to Abace and drawing all inferences in its favor, there are four independent reasons that the Agreements' non-compete provisions are not enforceable against Dr. Zhang.

### C.    *Abace's Remaining Claims*

Defendants contend that, as a matter of law, Abace's remaining claims also fail. Defs.' Mem. ISO Mot. SJ 26–30 [Doc. No. 129]. Abace offered no rebuttal in its opposition, and at oral argument, counsel for Plaintiffs conceded that if the court ruled for Defendants on the breach-of-contract claim, Abace's other claims—breach of fiduciary duty against Dr. Zhang (count II), unjust enrichment (count III) and civil conspiracy (count IV) against both Defendants, and

tortious interference against MtoZ (count V)—would necessarily fail. Accordingly, Defendants are entitled to summary judgment on the remaining counts because Abace's breach-of-contract claim fails and the Defendants' <u>Motion</u> [Doc. No. 124] is otherwise unopposed.

### V.  Conclusion

For the reasons stated herein, Defendants' <u>Cross-Motion for Summary Judgment</u> [Doc. No. 124] is GRANTED and Plaintiffs' <u>Motion for Partial Summary Judgment</u> [Doc. No. 115] is DENIED.

IT IS SO ORDERED.

March 31, 2024 <u>/s/ Indira Talwani</u>
United States District Judge

**ADD 026**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CREATIVE DYNAMICS, INC., and<br>BEIJING ABACE BIOLOGY CO., LTD.,<br><br>    Plaintiffs,<br><br>       v.<br><br>CHUNHONG ZHANG, MTOZ BIOLABS,<br>INC., ABC CORPS 2-10, and JOHN DOES<br>1-10,<br><br>    Defendants. | \*<br>\*<br>\*<br>\*<br>\*<br>\*     Civil Action No. 1:20-cv-11711-IT<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

JUDGMENT

April 30, 2024

TALWANI, D.J.

       Pursuant to the court's Memorandum and Order [ECF 146] denying the Plaintiffs'

Motion for Partial Summary Judgment [ECF 115] and granting the Defendants' Cross-Motion

for Summary Judgment [ECF 124], JUDGMENT IS HEREBY ENTERED in favor of

Defendants and against Plaintiffs. All parties shall bear their own costs and fees. This case is

CLOSED.

       IT IS SO ORDERED.

                             /s/ Indira Talwani
                             United States District Judge